United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   MELISSA COOK,                           No. C06-04337 MJJ

12              Plaintiff,                    **ORDER GRANTING IN PART AND
                                             DENYING IN PART DEFENDANT
13   v.                                       MORROW'S MOTION FOR SUMMARY
                                             JUDGMENT AND GRANTING CITY
14   FRANK MORROW,                           DEFENDANTS' MOTION FOR
                                             SUMMARY JUDGMENT**
15              Defendant.
                                        /
16

17                        **INTRODUCTION**

18          Before the Court are two Motions for Summary Judgment: (1) Defendant Frank Morrow's

19   ("Defendant Morrow") Motion for Summary Judgment and (2) Defendants Wayne Tucker and the

20   City of Oakland's (collectively, "City Defendants") Motion for Partial Summary Judgment.[1]

21   Plaintiffs Melissa Cook, individually and as guardian for Shamon Cook ("Shamon"), a minor, Kya

22   Cook ("Kya"), a minor, and Gerald Cook ("Gerald") (collectively, "Plaintiffs") oppose the Motions.

23   For the following reasons, the Court **GRANTS** in part and **DENIES** in part Defendant Morrow's

24   Motion for Summary Judgment and **GRANTS** the City Defendants' Motion for Partial Summary

25   Judgment.

26                     **FACTUAL BACKGROUND**

27          This case arises from two alleged incidents between Defendant Morrow and Plaintiffs.

28   Unless otherwise noted, the Court finds the following facts undisputed.

_____

[1]Docket Nos. 67, 64.

1    Defendant Morrow is a fifteen-year veteran of the Oakland Police Department. (Morrow

2  Decl. ¶ 1.) Defendant Morrow was on disability leave from his employment with the Oakland Police

3  Department for a year prior to, and including, the date in question. (*Id.* ¶ 18-19.) Defendant Morrow

4  has a daughter, Melisa Morrow ("Melisa"), who lives with her mother, Trina Crawford ("Crawford")

5  in Brentwood, California. (Morrow Decl. ¶¶ 2-4.) Defendant Morrow was not in uniform on the day

6  in question and he was driving his personal vehicle. (Shamon Cook Dep. at 17:10, Gerald Cook

7  Dep. at 71:1-8.) Defendant Morrow had a firearm with him the day of the incident. (Morrow Dep.

8  at 34:1-4.)

9    On February 17, 2006, Defendant Morrow received a phone call from the high school Melisa

10  attends. (*Id.* ¶ 2.) The school informed Defendant Morrow that his daughter left school early that

11  day because she was sick. (*Id.*) After receiving this call, Defendant Morrow drove to Crawford's

12  house to check on Melisa. (*Id.* ¶ 4.) Defendant Morrow did not find Melisa at Crawford's house.

13  (*Id.* ¶ 9.)  Crawford told Defendant Morrow by phone that Melisa might be at a boy's house across

14  the street, so he walked across the street to look for her. (*Id.* ¶¶ 7, 10.)

15    The "boy" Crawford referred to is Plaintiff Gerald Cook, Melissa's "boyfriend" or "good

16  friend." (Id. ¶ 7; Gerald Cook Dep. at 60:14-21.) Gerald, his two younger sisters and his mother live

17  across the street from Crawford. (Gerald Cook Dep. at 59:22, 60:35.) Defendant Morrow knocked

18  on the door of a house across the street from Crawford's residence and received no response.

19  (Morrow Decl. ¶ 10.) Shortly thereafter, Crawford returned home and told Defendant Morrow that

20  he was at the wrong house. (Morrow Dep. at 23.)

21  **1.    First Incident**

22    Much of what happened next, referred to as the "First Incident" for purposes of this Motion,

23  is disputed.

24    Defendant Morrow submits the following version of the incident. Defendant Morrow next

25  approached the Cook residence, knocked on the door, and spoke to the "young lady" who answered

26  the door. (Morrow Dep. at 24:16-20.)  This young lady was fourteen year-old Shamon Cook.

27  (Morrow Dep. at 59:16.) He identified himself as Melisa's Dad, said he was looking for Melisa and

28  asked her if she had seen Melisa. (*Id.*) Defendant Morrow did not identify himself as an Oakland

2

United States District Court
For the Northern District of California

1  police officer at this point and did not enter the house. (*Id.* at 24:23-25, 26:1-2.) A few minutes

2  later, two Brentwood police officers arrived on the scene. (*Id.* at 26.) They explained to Defendant

3  Morrow that they received a prowler call from the residents of the house Defendant Morrow had

4  mistakenly approached. (*Id.* at 27:10-11.) Defendant Morrow explained the situation to them, told

5  them he was an armed off-duty officer and enlisted their help in locating Melisa. (*Id.* at 27:12-15,

6  29:13-18, 30:15-20.) Defendant Morrow then stepped down off of the Cook residence porch and

7  walked to the sidewalk. (*Id.* at 27:17-25.) One of the officers then walked up to the Cook residence

8  porch and started talking to the young lady at the door.[2] (*Id.*) The officer asked Shamon if she knew

9  where Melisa was and if he could look inside the house for her. (*Id.* at 28:4-19.) The young woman

10 denied the officer entry and the officer never entered the house. (*Id.*)

11       Plaintiffs, on the other hand, contend that the evidence supports a different story. Plaintiffs

12 assert that Defendant Morrow, along with two uniformed officers, approached the Cook residence

13 and rang the doorbell. (Shamon Cook Dep. at 16:5.) Fourteen year-old Shamon Cook answered the

14 door. (*Id.* at 16:7.) Defendant Morrow was not in uniform but he told Shamon that he was with the

15 police department and showed her his badge which was on the left side of his waist. (*Id.* at 17:9-21.)

16 The other two officers were in uniform. (*Id.* at 17:19-21.) Defendant Morrow asked Shamon if she

17 had seen Melisa and Shamon replied that she had not. (*Id.* at 17:1-4.) The uniformed officers asked

18 Shamon if they could search the house and she said no. (*Id.* at 18:23-19:2.) Defendant Morrow then

19 "pushed right past" Shamon, entered the house, stood in the front entry, pulled out a notepad and

20 began asking Shamon how old she was, how old her brother was, and their respective dates of birth.

21 (*Id.* at 20:5-7; 21:10-12, 21-25.) The uniformed officers did not enter the house. (*Id.* at 23:2-3.)

22       After the officers and Defendant Morrow left the Cook residence, Shamon called her mother,

23 Ms. Cook, and told her that the officers came to the house looking for Melisa and asked to search the

24 house. (*Id.* at 23:19.) Shortly thereafter the uniformed officers returned to the Cook residence. (*Id.*

25 at 23:12-13.) Shamon put them on the phone with Ms. Cook and the officers then left the house.

26 (*Id.* at 25:8.)

27

28       [2] Defendant Morrow states that two officers arrived at the scene. In his description of the First Incident, however, he describes an officer, in the singular, as the actor who approached the Cook residence. (Morrow Dep. at 27:17-25.)

3

United States District Court

For the Northern District of California

**2.     Second Incident**

Around noon that same day Gerald Cook was sitting on his porch with his friend Dale and his two younger sisters when he heard yelling across the street. (Gerald Cook Dep. at 59:13-25.)  Gerald saw a man dragging Melisa down the driveway by her neck.  (*Id.* at 61:18-24, 62: 406.)  Defendants submit evidence that Defendant Morrow picked Melisa up by her arm and sweater and took her from Crawford's residence to his car.  (Morrow Dep. at 51:6-9.)  Gerald and Dale then left Gerald's porch and walked down the street in the direction of the incident.  (Gerald Cook Dep. at 64:20-24.)  The man with Melisa, Defendant Morrow, walked toward Gerald and they met in the middle of the street. (*Id.* at 65:21-23.)

Gerald and Defendant Morrow then began arguing.  According to Plaintiffs, Gerald yelled out to Defendant Morrow, "what are you doing?" and Defendant Morrow said "I'm OPD." (*Id.* at 63:22, 72:24.)  Defendants contend that Defendant Morrow never stated that he was engaged in any official duties related to his employment as a police officer.  (Morrow decl. ¶ 15,22.)  Gerald also called Defendant Morrow a "crooked cop," because "dragging people down the street is not part of, I don't know, I'm not an officer, but I know they not supposed to be dragging people down the street by their necks, especially off duty."  (*Id.* 69:14-16, 73:20-25, 74:1.)

According to Plaintiffs, Defendant Morrow drew a weapon from his trench coat, aimed it at the ground and said "I will spray this block."  (*Id.* at 69: 17-19.)  Plaintiffs contend that the weapon was a Glock, the same kind as Defendant Morrow's Oakland Police Department-issued firearm. (Gerald Cook Dep. at 10:9, Morrow Dep. at 12:25.)  Defendants contend that Defendant Morrow was not carrying any weapons during this incident.  (Morrow Decl. ¶ 17.)  Defendant Morrow then punched Gerald with a closed fist.  (Gerald Cook Dep. at 70:5.)  Defendant Morrow did not attempt to restrain, arrest or otherwise threaten Gerald.  (Gerald Cook Dep. at 77:15-25, 78:1-6; Morrow Decl. ¶ 20.)  Throughout the altercation Melisa was in Defendant Morrow's car.  (Gerald Cook Dep. at 78:23.)

Defendant Morrow never showed Gerald a police badge or other police identification.  (*Id.* at 71:9-12.)  Gerald knew that Melisa's father was a police officer before this incident.  (*Id.* at 74:20-25.)  Gerald had also heard from Melisa that her father hit and abused her.  (*Id.*)  On at least three

4

United States District Court

For the Northern District of California

1 previous occasions Melisa called Gerald to complain about having to visit her father on account of

2 this behavior. (*Id.* at 75:14-21.)  According to Plaintiffs, although Gerald had never met Melisa's

3 father, and did not initially know that the man dragging her across the street was Defendant Morrow,

4 he put it together when, at some point during the altercation, Defendant Morrow told Gerald to mind

5 his own business because he was Melisa's father.  (*Id.* at 76:11-18.)  Defendants, on the other hand,

6 assert that Defendant Morrow and Gerald interacted just prior to the Second Incident.  (Morrow

7 Depo. at 37:1-15.)  This interaction shows that Gerald may have known that Defendant Morrow was

8 Melisa's father, and a police officer, prior to the incident.  (*Id.*)

9      Plaintiffs filed this action against Defendant Morrow and City Defendants on July 14, 2006.

10 On, April 18, 2007 Plaintiffs filed a First Amended Complaint ("FAC") alleging nine causes of

11 action.  (Docket No. 47.)  Of relevance to this Motion are Plaintiffs' first and seventh causes of

12 action.  Plaintiffs' first cause of action, against all defendants, is a claim for relief under 42 U.S.C. §

13 1983 for alleged violations of Plaintiffs' First, Fourth, Fifth, Ninth and Fourteenth Amendment rights

14 under the United States Constitution.  (FAC at 7.)  Plaintiffs' seventh cause of action alleges

15 negligence against all defendants.  (FAC at 11.)

16      Defendant Morrow now seeks summary judgment on Plaintiffs' 42 U.S.C. § 1983 claims as

17 to both the First and Second Incidents.  Defendant Morrow argues that he was not acting under the

18 color of state law in either instance.  Plaintiffs oppose the Motion.  City Defendants seek summary

19 judgment on Plaintiffs' 42 U.S.C. § 1983 claim as to the Second Incident and Plaintiffs' seventh

20 cause of action for negligence.  City Defendants contend that Defendant Morrow was not acting

21 under the color of state law during the Second Incident and therefore City Defendants cannot be

22 liable.  City Defendants further contend that Plaintiffs' seventh cause of action for negligence cannot

23 succeed because: (1) Plaintiffs have not identified a statutory enactment giving rise to a mandatory

24 duty, and (2) the record shows that Morrow was not acting within the course and scope of his

25 employment.  Plaintiffs do not oppose City Defendants regarding the seventh cause of action.

26 **LEGAL STANDARD**

27      Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is

28 no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

5

law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the

initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings,

depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence

of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving

party meets this initial burden, the burden then shifts to the non-moving party to present specific

facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324;

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The non-movant's

bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion

for summary judgment.  *Anderson*, 477 U.S. at 247-48.  An issue of fact is material if, under the

substantive law of the case, resolution of the factual dispute might affect the case's outcome.  *Id.* at

248.  Factual disputes are genuine if they "properly can be resolved in favor of either party."  *Id.* at

250.  Thus, a genuine issue for trial exists if the non-movant presents evidence from which a

reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the

material issue in its favor.  *Id.*  However, "[i]f the [non-movant's] evidence is merely colorable, or is

not significantly probative, summary judgment may be granted."  *Id.* at 249-50 (internal citations

omitted).

# ANALYSIS

## I.     42 U.S.C. § 1983 Claim

42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or

immunities secured by the Constitution and laws' of the United States."  *Wilder v. Virginia Hosp.

Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).  Section 1983 is not itself a source of

substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.

*See Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  To state a claim under § 1983, a plaintiff must

allege two essential elements: (1) that a right secured by the Constitution or laws of the United States

was violated and (2) that the alleged violation was committed by a person acting under the color of

state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda County*, 811 F.2d 1243,

1245 (9th Cir. 1987).

A person acts under color of state law if he "exercise[s] power possessed by virtue of state

law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. at 49 (citation and internal quotation marks omitted).  Generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. *See Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997); *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 479 (9th Cir. 1991).  A public official's actions are not taken under color of state law, however, if they are not in any way related to the performance of his duties as a public official. *See id.*  The private actions of a public official are not, simply by virtue of the official's governmental employ, accomplished under the color of state law. *See Johnson*, 113 F.3d at 1117-18.  An official's actions may be under color of state law, however, if he purports or pretends to act under color of state law, even if his goals are private and outside the scope of his authority. *See Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998); *Van Ort v. Elate of Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996), cert. denied, 519 U.S. 1111 (1997).

The Ninth Circuit recently held that there are "three critical requirements" that must be satisfied when determining if an individual who invokes his law enforcement status is acting under the color of state law. *Anderson v. Warner*, 451 F.3d 1063, 1069-70 (9th Cir. 2006).

> First, the defendant's action must have been "performed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties." *McDade*, 223 F.3d at 1140. Second, the officer's pretense of acting in the performance of his duties must have had the purpose and effect of influencing the behavior of others. *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 839-40 (9th Cir.1996) (finding no color of state law because the victim had not opened the door based on defendant's status as a police officer). Third, the challenged conduct must be "related in some meaningful way either to the officer's governmental status or to the performance of his duties." *Martinez*, 54 F.3d at 987.

*Id.* at 1069.  In *Anderson*, the Court held that a lieutenant employed by the county sheriff's department was acting under color of state law even though he was off-duty and not wearing a uniform because he invoked his law enforcement status as a "cop" to keep bystanders from interfering with his assault on a motorist who rear-ended his personal vehicle. *Id.* at 1069-70. Against this backdrop, the Court turns to the facts of the present case.

    **1.    There are Triable Issues of Material Fact as to Whether Defendant Morrow Acted Under Color of State Law during the First Incident**

Defendant Morrow contends that he did not act under color of state law in the First Incident

7

United States District Court
For the Northern District of California

1  at the Cook residence.  Plaintiffs maintain that he did.  The Court applies the three factors set out in

2  *Anderson* to the facts in the present case.  Drawing all reasonable inferences in favor of Plaintiffs, the

3  non-moving party, this evidence can be read as creating a triable issue of material fact as to whether

4  Defendant Morrow acted under color of state law.

5      First, the Court considers whether Defendant Morrow's actions in the First Incident were

6  performed while he was "acting, purporting, or pretending to act in the performance of his [] official

7  duties."  *Anderson*, 451 F.3d at 1069.  According to Plaintiffs' evidence, Defendant Morrow stood

8  on the Cook residence porch with two uniformed officers, told fourteen year-old Shamon Cook, who

9  answered the door, that he was with the "police department" and flashed her a police badge.  He

10  asked Shamon if she knew where his daughter was.  He then "pushed" his way into the house.  Once

11  inside the house, he asked fourteen year-old Shamon, among other things, her age and her brother's

12  age.

13      Under these facts, although Defendant Morrow was not in uniform and was inquiring about

14  his daughter, he represented that he was with the police department and was thus acting, at least in

15  part, in an official capacity.  Defendant Morrow also approached Shamon alongside uniformed

16  police officers and asked questions other than his daughter's whereabouts.  All of these actions are in

17  keeping with what a police officer would do in the performance of his official duties.  A fact finder,

18  drawing all reasonable inferences in favor of Plaintiffs, could therefore conclude that Defendant

19  Morrow was pretending or purporting to act in the performance of his official duties.

20      Second, the Court determines whether Defendant Morrow's pretense of acting in the

21  performance of his duties had the purpose and effect of influencing Shamon's behavior.  *Anderson*,

22  451 F.3d at 1069.  In both inquiries, purpose and effect, a reasonable fact finder could find that

23  Plaintiffs' evidence is sufficient.

24      Plaintiffs contend that Defendant Morrow's purpose in representing himself as a police

25  officer, flashing his badge and asking Shamon investigatory questions was to influence Shamon's

26  behavior.  Defendants, on the other hand, maintain that Defendant Morrow introduced himself as

27  "Melisa's father," did not show Shamon his badge and thus did not intend to influence her behavior

28  with his official government status.  Because the Court is obligated at the summary judgment stage

1 | to draw all reasonable inferences in favor of Plaintiffs, the issue of Defendant Morrow's purpose
2 | cannot be resolved short of trial.

3 |   The effect of Defendant Morrow's representations on Shamon is also up for reasonable
4 | debate.  According to Defendants, Shamon denied Defendant Morrow entry to the house and
5 | Defendant Morrow's entrance into the house, if any, was a result of him "pushing" his way in.
6 | Thus, Defendant Morrow's representations that he was with the police department did not lead
7 | Shamon to allow him into the house or otherwise alter her behavior.  Plaintiffs, however, contend
8 | that Defendant Morrow's communication that he was with the police department and his presence
9 | alongside two uniformed police officers may have effected Shamon's behavior such that she allowed
10 | him to "push" his way in to the house.  As above, the Court cannot conclude that Defendant
11 | Morrow's actions did not have the effect that Plaintiffs assert.  The effect of Defendant Morrow's
12 | actions cannot, therefore, be resolved short of trial.

13 |   Finally, the challenged conduct, Defendant Morrow's entry into the house and questioning of
14 | Shamon, "must be related in some meaningful way either to the officer's governmental status or to
15 | the performance of his duties."  *Anderson*, 451 F.3d at 1069.  As above, it is certainly possible that a
16 | reasonable jury could find that Defendant Morrow's actions were related in a meaningful way to his
17 | status as an Oakland police officer.  According to Plaintiffs' evidence, Defendant Morrow was
18 | engaged in the type of behavior that police officers are generally known for – showing up at one's
19 | home to ask questions about people and incidents or attempting to gain entry to one's home to search
20 | for people or items.  While it is undisputed that Defendant Morrow had personal reasons for his visit
21 | to Shamon Cook's house, a reasonable jury could find that his conduct when he arrived there was
22 | meaningfully related to his governmental status.

23 |   For the foregoing reasons, the Court, therefore, **DENIES** Defendant Morrow's Motion to
24 | Dismiss Plaintiffs' § 1983 claims regarding the First Incident.

25 |   **2.**  **Defendant Morrow Did Not Act Under Color of State Law During the Second**
26 |     **Incident**

27 |   Defendant Morrow and City Defendants contend that Defendant Morrow did not act under
28 | color of state law in the Second Incident.  The Court applies the three factors set out in *Anderson* to

**United States District Court**
For the Northern District of California

9

the facts in the present case and finds that, given the totality of the circumstances, Plaintiffs have

failed to create a triable issue of material fact as to whether Defendant Morrow acted under the color

of state law.

First, the Court considers whether Defendant Morrow's actions in the Second Incident were

performed while he was "acting, purporting, or pretending to act in the performance of his [] official

duties." *Anderson*, 451 F.3d at 1069. "Merely because a police officer is recognized as an

individual employed as a police officer does not alone transform private acts into acts under color of

state law." *Van Ort*, 92 F.3d at 839.

During the Second Incident, Defendant Morrow told Gerald Cook that he was "OPD." Other

than this one comment, however, Defendant Morrow made no affirmative representations that his

actions – pulling or carrying his daughter across the street and putting her in his car – were related to

his duties as an Oakland Police Officer. Gerald's knowledge that Defendant Morrow was a police

officer is not enough to convert Defendant Morrow's actions to those done under state law.

Instead, drawing all reasonable inferences in favor of the Plaintiffs, the evidence shows that

Defendant Morrow was engaged in a personal matter during his trip to Brentwood. He was also on

disability leave from his employment, out of uniform and driving his personal car. His only action

that could be taken as purporting or pretending to act in the performance of his official duties was his

communication that he was "OPD." Gerald, however, knew that Defendant Morrow was off-duty at

the time of the incident. He also knew that Melisa had a confrontational relationship with her Father.

It is reasonable to infer, therefore, that Gerald thought the dispute he encountered was borne of their

relationship as father and daughter and was not a product of Defendant Morrow's status as a police

officer.

At oral argument Plaintiffs asserted that Defendant Morrow pretended to act in the

performance of his official duties by attempting to control the crowd during the Second Incident.

Plaintiffs did not raise this argument in their Opposition to this Motion, nor is it supported by the

record. Instead, Plaintiffs' Opposition brief is focused entirely on the impact of Defendant Morrow's

conduct on Gerald Cook. (Plf.'s Opp. to City Defendants' Motion at 9-10; Plf.'s Opp. to Morrow's

Motion at 9-10.) Furthermore, there is not sufficient evidence in the record to support a crowd

1   control argument.

2       In *Anderson*, the court held that a law enforcement officer who invoked his governmental

3   status by telling a crowd that he was a cop, ordered the crowd to stay back because it was a police

4   matter, and succeeded in altering the behavior of the bystanders so that they didn't come to the aid of

5   an injured person, was acting under the color of state law. *See Anderson*, 451 F.3d at 1069-70. The

6   facts here are inapposite.

7       Plaintiffs do not allege, nor does the record reflect, that Defendant Morrow made any

8   attempts to control the crowd or effect the bystanders' behavior. The only people allegedly at the

9   scene were Gerald Cook and his friends Dale and Harold, Gerald's sisters Shamon and Kya Cook

10  and Gerald's mother, Melissa Cook. During the incident, Harold was nearby on his front porch.

11  (Gerald Cook Dep. at 67:6-9.) Shamon and her younger sister Kya, were on the porch with Gerald,

12  then, as the incident progressed, they walked down the street to the sidewalk a few feet away from

13  Gerald and Defendant Morrow. (Shamon Cook Dep. at 27:12; Shamon Cook Decl. ¶ 5.) Melissa

14  Cook was in her house, watching the altercation from her front door. (Melissa Cook Dep. at 53:24.)

15  When she saw Defendant Morrow punch Gerald, she called to all of the kids to return to the house.

16  (*Id.* at 43:21-24.) There is nothing to indicate that Harold, Shamon, Kya or Melissa Cook perceived

17  Defendant Morrow as attempting to keep them away from the incident or control them. There is also

18  no evidence indicating that they altered their behavior or stayed away from the incident for this

19  reason.

20      Gerald, after he learned that Defendant Morrow was OPD, proceeded to walk toward

21  Defendant Morrow and engage in the confrontation. (Gerald Cook Dep. at 69:11-19.) Dale walked

22  with Gerald toward Defendant Morrow and attempted to pull Gerald back after he saw that

23  Defendant Morrow had a gun. (*Id.* at 69:20-23; Melissa Cook Dep. at 42:24-25.) This evidence

24  suggests that Gerald was not deterred by Defendant Morrow and Dale did not refrain from

25  attempting to aid his friend.

26      The evidence therefore does not support the contention that Defendant Morrow engaged in

27  crowd control measures, nor does it show that the bystanders perceived Defendant Morrow as

28  attempting to control their behavior. Finally, the evidence does not show that the bystanders'

United States District Court
For the Northern District of California

11

behavior was impacted by any assertions or control exerted by Defendant Morrow.  Therefore,
besides Defendant Morrow's assertion that he was "OPD," the facts in the present case do not
support the requirement that Defendant Morrow acted, or pretended to act, in his official duties
during the First Incident.

Second, the Court determines whether Defendant Morrow's pretense of acting in the
performance of his duties had the purpose and effect of influencing Gerald's behavior. *Anderson*,
451 F.3d at 1069.  As discussed above, Defendant Morrow did not act or pretend to act in the
performance of his official duties.  The Court, therefore, can reasonably infer that he did not have
that purpose.  Furthermore, his actions did not have the effect of influencing Gerald's behavior.
Plaintiffs do not contend that Defendant Morrow's representation to Gerald that he was "OPD" led
Gerald to change or alter his conduct.  Instead, after learning that Defendant Morrow was a police
officer, Gerald continued interacting with Defendant Morrow and called him a "crooked cop."  There
is no competent evidence, therefore, supporting the purpose and effect requirements of *Anderson*.

Finally, the challenged conduct, Defendant Morrow's verbal and physical altercation with
Gerald, "must be related in some meaningful way either to the officer's governmental status or to the
performance of his duties." *Anderson*, 451 F.3d at 1069.  Defendant Morrow, while taking his
daughter away from her mother's house, yelled at, threatened and punched his daughter's boyfriend
Gerald after Gerald called him a "crooked cop."  These actions were not related, much less
*meaningfully* related, to the officer's governmental status as an Oakland Police Officer or the
performance of his duties.  Instead, Defendant Morrow was acting "in the ambit of his personal
pursuits." *Screws v. U.S.*, 325 U.S. 91, 111 (1945). *See also Martinez v. Colon*, 54 F.3d 980, 986
(9th Cir. 1995) (explaining that not every action undertaken by a person who happens to be a police
officer is done under the color of state law).  Defendant Morrow neither pretended to act in his
official status nor acted in a meaningful way in relation to the performance of his duties.

Plaintiffs contend that Defendant Morrow wielded an Oakland Police Department-issued
firearm during the altercation, thus converting his actions into those under the color of state law.
Defendants dispute this fact.  Even if Plaintiffs' evidence is believed, however, not "every use of a
policeman's gun, even in the course of purely personal pursuits, creates a cause of action under

12

section 1983." *Martinez*, 54 F.3d at 987. Instead, there must be "additional indicia of state authority to conclude that the officer acted under the color of state law." *Id.* at 988 (citation omitted). The Court finds that the evidence lacks additional indicia of state authority. The third requirement of *Anderson* is, therefore, not satisfied.

In sum, on the record before the Court, Plaintiff has failed to present competent evidence upon which a reasonable jury could conclude that Defendant Morrow acted under color of state law during the Second Incident. Plaintiffs' arguments rest on two assertions - that Defendant Morrow communicated that he was "OPD" and that the gun he was carrying was issued by the Oakland Police Department. These assertions, in light of the totality of the circumstances, do not present a triable issue of material fact as to whether the actions of Defendant Morrow had the purpose and effect of influencing Gerald's conduct or that the challenged conduct is related, in some meaningful way, to Defendant Morrow's governmental status. The Court, therefore, **GRANTS** Defendant Morrow's and City Defendants' Motion to Dismiss Plaintiffs' § 1983 claims regarding the Second Incident.

II.     **Plaintiff's Seventh Cause of Action for Negligence**

City Defendants contend that Plaintiffs' seventh cause of action for negligence cannot succeed because: (1) Plaintiffs have not identified a statutory enactment giving rise to a mandatory duty, and (2) the record shows that Defendant Morrow was not acting within the course and scope of his employment. Plaintiffs did not oppose City Defendants on this point in their opposition brief and Plaintiffs confirmed their non-opposition at oral argument.

Under California law, "direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care." *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal.4th 1175, 1183 (2003). *See also* CAL. GOV'T CODE § 815 (West 2007). Furthermore, the statutory enactment must create a mandatory, not discretionary, duty. *See Haggis v. City of Los Angeles*, 22 Cal. 4th 490, 498 (2000). However, a public entity can still be held vicariously liable for the actions of its employees. *Id. See, e.g., Brennemen*, 208 Cal. App. 3d 812, 818 (noting the state may be liable for the actions of its parole officers), *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1112 (1st Dist. 2004) (noting that plaintiff may assert an alternative theory

13

United States District Court
For the Northern District of California

1  of vicarious liability against a city for the conduct of its police officers).  To establish vicarious

2  liability, the employee's "purported misconduct" must arise from the employer's enterprise and have

3  a causal nexus to the employer's work.  *Hoblitzell v. City of Ione*, 110 Cal. App. 4th 675, 683 (2003).

4      In the present case, Plaintiffs do not identify a statutory enactment that provides a basis for

5  their negligence claims against the City of Oakland.  Furthermore, Plaintiffs do not allege any facts

6  supporting vicarious liability against City Defendants, nor have they produced any competent

7  evidence on the issue.  Instead, City Defendants argue, and the record reflects, that Defendant

8  Morrow was not within the course and scope of his employment because he was off duty, out of

9  uniform, out of his jurisdiction, on disability leave and attending to purely personal business.

10     The Court finds City Defendants' contentions persuasive and, given Plaintiffs' lack of

11  opposition, **GRANTS** City Defendant's Motion to Dismiss Plaintiffs' seventh cause of action for

12  negligence against City Defendants.

13                              **CONCLUSION**

14     For the foregoing reasons, the Court **DENIES** Defendant Morrow's Motion to Dismiss

15  Plaintiffs' § 1983 claim regarding the First Incident and **GRANTS** Defendant Morrow's and City

16  Defendants' Motion to Dismiss Plaintiffs' § 1983 claim regarding the Second Incident.  The Court

17  further **GRANTS** City Defendants' Motion to Dismiss Plaintiff's seventh cause of action for

18  negligence.

19

20

21  **IT IS SO ORDERED.**

22

23

24  Dated: October 1 ̇, 2007

25                                    MARTIN J. JENKINS
                                      UNITED STATES DISTRICT JUDGE

26

27

28

14